This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**CITY OF RIO RANCHO,**

Plaintiff-Appellee,

**v.**                                                                           **No. 30,246**

**JON J. ARRELLANO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**John F. Davis, District Judge**

James C. Babin, City Attorney
Gina R. Manfredi, Assistant City Attorney
Rio Rancho, NM

for Appellee

Fuentes & Associates, P.C.
Robert R. Fuentes
Rio Rancho, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

Defendant appeals the district court's judgment convicting him after a bench trial of aggravated driving while under the influence (DWI) and speeding. Defendant argues that he was entitled to receive warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), prior to being asked to perform field sobriety tests [DS 1-3] and prior to being read the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2007). [DS 3-5] We issued a calendar notice proposing to summarily affirm Defendant's convictions. Defendant filed a timely memorandum in opposition, and the City of Rio Rancho filed a timely memorandum in support. After due consideration, we affirm.

**DISCUSSION**

Defendant continues to argue that he was entitled to receive *Miranda* warnings prior to being asked to perform field sobriety tests. [DS 1-3; MIO 2-8] Defendant contends that (1) he was in a situation which was equivalent to being under arrest, (2) the police officers knew that their actions and questions during the field sobriety tests were likely to solicit incriminating responses, (3) the actions and questions under this set of circumstances required *Miranda* warnings, and (4) in the absence of *Miranda* warnings, Defendant's actions and statements were suppressible. [DS 2-3]

"Whether a person is subject to custodial interrogation and entitled to the constitutional protections of *Miranda* is a mixed question of law and fact." *State v.*

*Javier M.*, 2001-NMSC-030, ¶ 17, 131 N.M. 1, 33 P.3d 1. We review factual determinations for substantial evidence and the application of law to the facts de novo. *State v. Wilson*, 2007-NMCA-111, ¶ 12, 142 N.M. 737, 169 P.3d 1184.

Roadside questioning of a motorist, including the administration of field sobriety tests, usually does not constitute custodial interrogation for *Miranda* purposes. *See State v. Sanchez*, 2001-NMCA-109, ¶ 22, 131 N.M. 355, 36 P.3d 446; *Armijo v. State ex rel. Transp. Dep't*, 105 N.M. 771, 773, 737 P.2d 552, 554 (Ct. App. 1987). While Defendant is correct that even in routine traffic stops factual circumstances can render a defendant "in custody" for the purposes of *Miranda*, we are not persuaded that Defendant has demonstrated that such circumstances exist in this case. *See Wilson*, 2007-NMCA-111, ¶ 23 (recognizing that determining whether an individual is in custody for *Miranda* purposes requires an objective test to resolve whether there was a formal arrest or restraint of freedom of movement equivalent to a formal arrest); *Armijo*, 105 N.M. at 773, 737 P.2d at 554 ("*Miranda* warnings are required after a traffic stop only if defendant can demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest." (internal quotation marks and citation omitted)).

In our calendar notice, we noted that the docketing statement does not set forth any facts to suggest that the traffic stop at issue was anything but routine. The record indicates that the police officer's actions and questions during the stop appear to fall safely within the realm of routine questioning. [RP 49-51] *Cf. Wilson*, 2007-NMCA-111, ¶ 35 (holding that the defendant was entitled to *Miranda* warnings after officers forcefully handcuffed him and placed him in a police vehicle). In his memorandum in opposition, Defendant fails to set forth any additional facts that would persuade us that Defendant's freedom of movement was restrained in a manner comparable to a formal arrest.

We understand Defendant to argue that any time a person is subject to field sobriety tests, the person should be considered under arrest and entitled to *Miranda* warnings. [MIO 2-8] However, our cases have already rejected that argument. *Armijo* specifically recognized that noncoercive questioning necessary to obtain information to issue a traffic citation and reasonable requests by officers to perform field sobriety tests do not rise to the level of custodial interrogation requiring *Miranda* warnings. *Armijo*, 105 N.M. at 773, 737 P.2d at 554. As in *Armijo*, there is nothing about the facts of this case to indicate that Defendant was in custody. Thus, while we agree that what starts as routine may progress to a custodial situation, we do not agree

that this is true in all situations in which a motorist is ordered out of his car and asked to perform tests and answer questions.

Defendant contends that it is a fiction that a police officer acting under his police authority is making requests. [MIO 8] However, this Court has already addressed this issue in *Armijo* by noting that "[t]he fact that the motorist may temporarily feel that he is not free to leave does not render him in custody for purposes of *Miranda*." *Armijo*, 105 N.M. at 773, 737 P.2d at 554 (internal quotation marks omitted). Field sobriety tests and the questions asked during the tests do not in and of themselves violate the privilege against self-incrimination. *See id.* at 773-74, 737 P.2d at 554-55 ("The privilege against self-incrimination is not necessarily implicated whenever a person is compelled in some way to cooperate in developing evidence which may be used against him.").

Defendant has not demonstrated that he was subject to any degree of restraint that was beyond the scope of an ordinary, routine DWI investigation. Defendant cites to no authority for the proposition that a person subject to an investigatory detention, including a routine DWI investigation, is entitled to *Miranda* warnings. Based on the circumstances of this case, we reject Defendant's arguments that he was subject to a formal arrest or restraint of his freedom of movement during the field sobriety tests such that *Miranda* warnings were required.

5

Defendant also raises four additional issues arguing that he should have received *Miranda* warnings prior to being read the Implied Consent Act. [DS 3-5] Defendant argues that (1) the requirement that he answer whether he voluntarily consented to a breath-alcohol test after being formally arrested implicates his right to counsel; (2) asking for consent after being arrested constitutes custodial interrogation; (3) any answer to the mandatory question constitutes protected testimonial speech; and (4) because the answers are testimonial, *Miranda* warnings are required. [DS 4-5]

As discussed in our calendar notice, this Court recently addressed the issue of whether *Miranda* rights were required prior to implied consent advisement in *City of Rio Rancho v. Mazzei*, No. 28,609, slip op. at 5-6 (N.M. Ct. App. March 8, 2010). Although Defendant takes issue with the page numbers we cited [MIO 9], we are relying on the slip opinion available on the New Mexico Supreme Court website. *Mazzei* concluded that *Miranda* warnings were not required prior to being advised of the Implied Consent Act. *Mazzei*, at 5-6. We reasoned that "[t]he provisions of New Mexico's Implied Consent Act essentially declare that any person who operates a motor vehicle in New Mexico and is arrested under suspicion of DWI is deemed, by law, to have consented to chemical tests of his or her breath or blood, or both, to determine the drug or alcohol content." *Id.* at 5. "Section 66-8-107(B) authorizes an officer who has reasonable grounds to believe a person may be driving while under

6

the influence of intoxicating liquor to request that the person agree to take a chemical test to determine blood alcohol content." *Id.*

While *Miranda* warnings are designed to protect an accused's Fifth Amendment right against self-incrimination, our courts have consistently held that physical evidence is excluded from the scope of the protection. *Id. Miranda* warnings are only required when an accused is asked to provide testimonial or communicative evidence. *Mazzei*, at 5. When a person suspected of DWI is asked to provide a breath or blood sample, the test and analysis do not require testimony or communication. *Id.* at 6. As noted in *Mazzei*, asking a defendant if he or she agrees to take a test only requires a simple yes or no answer and therefore is not testimonial. *Id.* Accordingly, *Miranda* warnings are not required. *Id.*

Defendant questions our reliance on *Mazzei* because the defendant in *Mazzei* has filed a writ of certiorari in the Supreme Court. [MIO 9] However, that does not mean that *Mazzei* is not good law. Moreover, as the City points out, Defendant's argument that the Implied Consent Act violates his constitutional rights has previously been rejected. [MIS 2-4] In *McKay v. Davis*, 99 N.M. 29, 31, 653 P.2d 860, 862 (1982), our Supreme Court recognized that there is no constitutional right to refuse to take a breath test. Because there is no constitutional right to refuse, any testimony about the refusal to submit to breath or chemical testing does not burden the Fifth

7

Amendment. *See id.*; *State v. Kanikaynar*, 1997-NMCA-036, ¶ 19, 123 N.M. 283, 939 P.2d 1091. In addition, just as the answer to the consent question does not constitute protected constitutional speech, there is no right to counsel under the New Mexico Constitution when a motorist is asked to submit to chemical testing. *See Kanikaynar*, 1997-NMCA-036, ¶¶ 8-16.

In his response, Defendant argues that a defendant can withdraw consent and that it is improper for a prosecutor to comment that consent was not given. [MIO 9-10] Defendant relies on cases that do not apply to the situation before us concerning the Implied Consent Act. As noted earlier in this opinion, our cases have rejected Defendant's arguments. A legally arrested suspect has no right to refuse a chemical test. *See id.* ¶¶ 19-20. Thus, although a defendant may choose not to cooperate by refusing to submit to a test, a defendant does not have a legal right to refuse. *Id.* Accordingly, consent in the constitutional sense is not required. *Id.* Defendant's refusal to submit to testing is not subject to constitutional protections. *Id.* Further, as already noted, evidence of a defendant's refusal to take a breath test is admissible and does not penalize one for exercising a constitutional right. *McKay*, 99 N.M. at 31-32, 653 P.2d at 862-63. Thus, a prosecutor can comment on a defendant's refusal to take a test. *Id.*

Although Defendant claims the New Mexico Constitution offers greater protection, our cases have already rejected Defendant's arguments. Defendant does not cite to any New Mexico case law that supports his position in the context of the Implied Consent Act. For these reasons, and the reasons stated in the calendar notice, we hold that Defendant was not entitled to *Miranda* warnings prior to being asked to perform field sobriety tests or prior to being advised pursuant to the Implied Consent Act.

**CONCLUSION**

We affirm.

**IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Judge**

_____

**LINDA M. VANZI, Judge**